Good morning, Your Honors. Good morning. May it please the Court, Matthew Clark on behalf of the appellants, Chris Meyer, Joe Ledesma and Ledesma and Meyer Construction Company. At the outset, I would like to please reserve five minutes of my time for a rebuttal argument. And also at the outset, I would like to start by addressing the Court's order from last week regarding certification. In this case, appellants believe that certification is an appropriate mechanism to- Is or isn't? Is, excuse me, is an appropriate mechanism to receive some guidance and resolution from the California Supreme Court. Under California Rule of Court 8.548, certification is an appropriate mechanism when the question would help decide questions under our case, which in this case it absolutely would. A threshold question is really whether an occurrence exists under the liberty policies. And it's also a question that the California Supreme Court really hasn't had an opportunity to weigh in on. There's been some cases that have kind of nibbled around the edges, but nothing has actually hit this issue head on. And so the appellants believe that it would be appropriate, and actually it is the same procedure that was followed in the Minkler case, which is cited in both of the briefs, where a question was certified to the California Supreme Court, answered by the court, and assisted the Ninth Circuit in guiding it on California insurance principles. In this case, what we really have are three insureds, or three primary insureds, Ledesma, Meyer, and their company, that were found liable for nothing intentional, for nothing egregious. The only acts on which judgment was found in this case were based on negligence. Negligent supervision, negligent hiring, negligent retention, and general negligence as to the individual Mr. Meyer and the individual Mr. Ledesma. No allegation, no finding, no holding, no judgment for an intentional tort. Instead, everything was based on just negligence or the failure to use due care. And that's really why insureds purchase insurance. It's to protect them from unexpected, unforeseen things that happen during the policy period. In this case, Ledesma and Meyer paid more than $150,000 for the two policies in premium payments on just those two policies to cover their business and cover themselves. And it's to cover them from accidents and from unexpected things that happen. And that's exactly what we have here. We have them hiring... Yes, I'm curious how this was accidental, because it seems like you have L&M intentionally hiring Hecht. Is that correct? They deliberately hired him. Yes, ma'am, that's correct. They knew that Mr. Hecht was a sex offender? Well, Your Honor, there's some dispute about that. It's whether knew or should have known. That's the standard under the negligent hiring. So it's knew or should have known. But it was his brother-in-law. He knew he had been convicted. They knew that there was an issue there. As to the extent of that issue, that was disputed in the underlying case as to... Well, the dispute was to exactly what the facts were, I thought, supporting the sexual assault conviction, not that he was a convicted sex offender. It was whether he did it when he was 17 to a 14-year-old, not that he was a convicted sex offender. Is that correct? He disclosed that he was on the sex offender registry. There was dispute, but in any event, Your Honor, there's no dispute that they expected him to go out and molest someone. There's no dispute that they intended or encouraged. How were those injuries caused by accident, I guess? Certainly. So when you look at the Delgado language, and you have to look at the California Supreme Court's language in Delgado, in determining whether an accident exists under a liability insurance policy, you have to look at the actions of the insured for which liability is sought to be imposed. And in this case, those actions are the negligence, negligent supervision, hiring, and retention. The molestation is not the actions of the insured for which liability is being imposed. It is only the negligence of L&M that impose liability on them. And furthermore, when you... So negligence, not intentional to hire a registered sex offender. It is negligent. And place them at a middle school construction. Of course. That was the cause of action, Your Honor, that they were found liable for is negligence. It's not just the hiring. The hiring is only one part of it as well. It's also the retention, the supervision, and placing him on the school property. That is the negligent act, because if you look at the Merced Mutual language, it talks about the fact that an accident exists even if we assume for the sake of argument that hiring Mr. Hecht was a deliberate act, that if there is some additional unexpected unforeseen independent act, that that can still constitute an accident. And I understand that because it comes down to was it unforeseeable. And so I guess that's my lead-up is how was this unforeseeable considering that Desma hired a registered sex offender and then put that offender on a workplace site at the Cesar Chavez Middle School. Well, I think it's important then to look at there's some language in the state versus all-state case. That is the discharge from the acid pit case, where they really talk about the fact that knowing that something may occur or knowing that there may be an issue with something is not the same as expecting it to occur or wanting it or intending that it occur. And that's really the difference here. That's why the cause of action is based on negligence and not on an intentional tort for putting Mr. Hecht in that position. It's based on the failure to take due care of Mr. Hecht on the job site instead of intentionally or expecting that by putting him there he would molest someone. It's just that failure of due care, not an intentional act. And so that's really the difference there, Your Honor. Which also leads back to, again, in the Merced Mutual case, they talk about that if any aspect in the causal series of events is unexpected from the standpoint of the insured, that it can still be an accident. And that's exactly what we have here, is that although they hired him, they kept him on the payroll, there was no expectation he was actually going to go out and commit these acts. And so it really divorces it from the kind of cases that we see where it's the insured going out and committing an intentional act. For example, in Quan or in Merced or in some of the various cases where the insured is the one going out and committing the intentional act and knowing that his acts were wrong and intending to hurt someone with them. That's not the acts of the insured here. It's only based on their negligence. I think it's also important to distinguish some of the cases that the appellees rely upon in that a lot of those cases have specific exclusions for assault and battery, for molestation, for the aircraft exclusion. And it's different in this case because you're only looking at the broad coverage provisions. So coverage provisions are interpreted broadly under California law compared to exclusions, which are interpreted narrowly. And in this case, that accident language, when you compare it to the actions of the insured, it's only on negligence, which is an accident from the standpoint of the insured, from L&M's viewpoint. Had the liberty entities intended to exclude any kind of molestation action or any kind of assault action, they very easily could have done so. Molestation exclusions are very common in policies throughout California, in both homeowner policies, commercial general liability policies throughout California. They didn't include one here. There is no specific exclusion that would exclude this kind of act. Well, you just mentioned California cases, and I was curious, are there any California cases in which an employee's sexual assault or related conduct has been covered under an employer's general insurance liability? I'm not certain about sexual assault because in most of the cases that have been cited in this case, there have been specific exclusions for molestation. We've cited the court to some of those cases that involve other intentional torts. For example, the priest case. Well, the priest case, excuse me, which was, sorry, it was the, well, in any event, one of the cases cited in there was about a Catholic priest who had been molesting young boys, and although the court didn't really get into it, it essentially assumed that the negligent supervision of that priest could be covered under the policy. But for most of these policies, there is a specific exclusion which excludes any act arising out of molestation or any act arising out of assault. They didn't do that in this case. Instead, Desmond Meyer paid a lot of money for a coverage to cover themselves for anything that might happen that's unintentionally caused by their conduct, and that is exactly what happened with Ms. Doe. It's very unfortunate, but it's still an accident from the standpoint of the insured and entitled to coverage. And that's also part of why this case should fall under that coverage, is because to adopt Liberty's view would deprive insureds across California of a substantial part of their coverage. It would essentially deprive them of coverage any time someone down the line commits an intentional tort, no matter how, you know, faultless or how negligent their conduct might be, it would exclude coverage for anything down the line that might be intentional. In addition, it would also deprive victims across the state of a source of compensation for acts that they have to go out and prove negligence on that now are no longer covered because some act in the causal chain down the line was intentional. And that's just not the case. Not just some act. I mean, it's the penultimate act. It's the action that gives rise to any liability. Well, and the problem, though, is that in Minkler, when you look at the Minkler case, it talks about the fact that negligent supervision is an independent tort. It is an independent action and an independent tort that arises its own liability. And so you cannot impute the intentional things down the line to the negligent insured. We have to deal with the language of the policy. The language of the policy doesn't say we'll provide coverage for any negligent act that results in liability. It says we'll provide coverage for an occurrence. And it does, and an occurrence being defined as an accident under California law, you have to look from the standpoint of the insured, which, again, is L&M here. And their standpoint, the actions to Doe were an unexpected, additional, unforeseen, independent act that under Merced Mutual, under Delgado, under Minkler, under many of the cases that we've cited would be an accident. You keep saying unforeseen when you string along those words. And I guess that seems a little bit off because presumably if it was totally unforeseeable, your clients wouldn't have been held negligent. So I think it's more, isn't it just that it was unexpected? That seems to me the right term, not unforeseen. Well, I think that there's a difference, too, between unforeseen and foreseeable. And foreseeable is only just the possibility of foreseeing it. Unforeseen instead means they didn't foresee it at all. There was the possibility of them foreseeing it, but they didn't actually foresee that by putting Hecht on the job site, he would commit this kind of act. Maybe not subjectively. I don't know. Who knows what your clients were actually thinking at the time. But from an objective standpoint, I presume that, I can't remember if this is an arbitration or a jury verdict that resulted. It was a CCP 638 reference. And so an independent judge was appointed, a retired judge was appointed, to hear a contested liability hearing who made the finding that they were negligent. Okay, but I assume that that meant, they said, a reasonable person in your client's shoes, knowing what they should have known about this guy's background, should have been able to foresee that something like this would happen. And again, Your Honor, I would go back to the difference between it being foreseeable and being unforeseen. And so that state versus all state language about, or for example, in the Hogan case, which is the lumber case where they're cutting the two different types of wood, and the court found that although the insured knew that there were problems with the saw, knew that it had problems in the past, and deliberately fed the wood into the saw, it was still an accident when the boards were cut too narrow. The accident did not occur, though, when he deliberately cut the boards too wide. And so I think that goes to a bit of the difference between unforeseen and foreseeable. It may have been foreseeable that the boards were going to be cut too narrow, but that didn't take it out of the realm of being an accident. Unless, Your Honor, if you could. I reserve the balance of it. Yes, Your Honor. Thank you. Good morning. Honored to be here. Patrick Fredette on behalf of Liberty Surplus Insurance Corporation and Liberty Insurance Underwriters, who I'll refer to generically as the Liberty entities. As counsel did a moment ago, I'll start off similarly with addressing the court's question about whether it appears appropriate to certify this subject to the California Supreme Court. I answer that in the negative. And the reason why is I believe the law that exists out there, and we'll have a chance to discuss it, but Maples, Delgado, Minkler, L.A. Checkers, provide the blueprint for which this court can proceed to reach a reasoned decision on law that I think has existed in California for many, many years. What do you think the California Supreme Court meant in the Minkler case by that but see site? I studied that, read it five, ten times, and I can't for the life of me figure out what they were trying to signal to the outside world. I've read it multiple times. As I did your question, and maybe I can answer both in some way, the question posed to me or to the parties in a sense contained the answer in that it clarified with accuracy what was the cause of this tragic incident, which was molestation. The Minkler court, and it's interesting, counsel's firm actually coincidentally prosecuted that claim on behalf of the Minklers. And the Minkler court in that case, as you may recall, was dealing with an intentional act exclusion, expected or intended exclusion, which references specifically an insured, that is when an insured expects or intends. And the court looked at it from the perspective of the molester and certainly concluded there was no coverage because that simply follows from the nature of the act. Then they looked at it as to the spouse who had prospective liability for negligent supervision, or the mother I think in that case, excuse me, and looked at the exclusion and then looked at the separation of insured clause and decided in that context you have to treat each insured separately. The dropping of the footnote, and particularly the cites to Maples and the cites to Hogan, and the cites to Delgado, I don't believe they cited actually Maples, I think it was Hogan and Delgado. To me, we're appalled to say that Safeco, you have the wrong issue before us. Because why else would that be there? The only context to give it meaning is that the parties failed to address what was really the germane issue, which is before you even get to the exclusion, whether the insuring agreement itself is implicated. No, I agree with you on that. But I'm saying the but see is just ambiguous. Well, maybe it's not in your mind. But what I read it, I read the court to say this issue hasn't been put before us. Boy, it sure seems like the insurance company should have raised it. These are the cases that of ours that we probably think are most on point. But does that mean but see, go see these because it means that if they had raised this issue, we would have rejected it summarily or go see them because had they raised it, we would have. That's what I can't figure out. You know, and in all fairness, you know, the conclusion to that may be a byproduct of the shoes in which you sit. Right. And so for me or Stan, for that matter. So for me, though, clearly the context with which the footnotes there and the but see reference is a reference to you missed the issue. And I'm sure counsel had a sigh of relief when Safeco did. And but see these cases because these cases provide the clarity, which is in the first instance, this case shouldn't be here because the focus is on the insuring agreement. And that's important here because part of the there are two things in my mind. I can't really struggle with this a little bit, two things in my mind that I believe that the desmos operate from. In one sense, they focus on Delgado and focus on sort of loose sites from Delgado. Failing to appreciate that Delgado was a situation really not like here because Delgado was a plaintiff and a defendant. Here we have a couple of different defendants independent from the actor. And so the discussions that the Dakota court was initially grappling with was one from whose lens do you view the occurrence analysis first? And they argued in the alternative. First, the judgment creditor, I believe in that case, took the position. You look through the lens of the injured party and the court concluded that can't be so. And then alternatively argued, well, you look through the lens of the insured. And I think the court correctly said that's not really true either. And the reason why this is the distinction with Minkler and whose lens are you supposed to view it? It's purely an objective standard. And this is important because if you look at the insuring language and if you do a juxtaposition between that same Minkler and the exclusion, the insuring language talks about, you know, we agree X, Y, Z. And then it says, but bodily injury has to be caused by an occurrence. So references to the act, not the actor. So if you want to say an objective standard, then fine. From a reasonable insured standpoint, that seems to me that's the best it could be from your standpoint. It can't be from the insurer's standpoint. That's for sure. When I say objective, you know, I don't think that particular point actually has been directly addressed. But if you look at the Delgado analysis, when they got into this issue, they said, and I thought this was pointed because it fits well into the L.A. The direct harm is the assault. It's not the preceding mindset of the insured, for example. And I think that that's where Ledesma in part sort of grabs onto this language as you look at it from the insured's perspective to define whether or not it's accidental. But you can find language in Delgado that supports Ledesma. You know, the language, the law looks for purposes of causation analysis to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability. Here, liability has been imposed. Why isn't that language sufficient to support the finding of coverage here? Because Delgado dealt with a different circumstance. Delgado dealt with a single individual who had the claims against them. It's a different context here. That's the problem, though. You've got this language in Delgado that, and isn't that a reason why this should be certified? Respectfully, Your Honor, no. And here's a couple of different reasons. You know, one, that language to me is a jumping off point for the court to address the issue of what was going on in the insured's mind that precipitated the assault. And so the Delgado court's analysis to get to the conclusion that an assault in battery, it's the physical contact that's the focus because that's the immediate cause of the harm, was the court's exercise of disassociating the insured's mindset and taking that apart and simply looking at the act. And I think that gets back to this concept of the objective standpoint of looking at it through what is the harm that directly preceded the act. The other thing that I... I don't think you're limited to the California Supreme Court, but I know that would be the golden rod, right? But certainly here are the cases. I think you look at Delgado and the focus on the immediate cause, not those acts that preceded. I think you also look at the footnote in Minkler, notwithstanding the question mark with the butt C, in context. Particularly if you look at the sites, the jump pages that the court referred you to. And then I think you look at the appellate cases in Maples. And Maples is sort of that stream, you know, that sort of stream that is a continuous sort of stream of cases. And you sort of anchor with some of these cases, right? Delgado looks to it. Minkler looks to it. And then the L.A. Checkers case. And I think there's a unity in all of those cases that focus on the direct harm. And that's important because that unity, again, looks at the insuring clause not coextensive with the actor, because it's not the actor that's important. It's the act. And if the act itself that caused the harm is intentional, as in this case, then those earlier acts have no causal relationship from an occurrence standpoint. They may have let the act and put the ball rolling in a sort of a causal chain. But they're distinct from and disassociated from the direct act that caused the harm. And I think, you know, to me, in addition to both the Supreme Court cases and the appellate court cases, you have a couple of federal district court cases that the court can also look to to glean a perception of the direction the law goes, particularly because you're dealing with judges that sit in California and know the law well. In my mind, this case is the Farmer's case. But in Farmer, the judge specifically said, I really don't need to decide this issue. If I had to, I'd be inclined. And I think it is the same kind of case. I agree with you, Your Honor. If he had to, he had a molestation exclusion in that case. Correct. And so he didn't, you know, but the intellectual exercise of reflecting on the first issue about whether or not the insuring clause is itself is satisfied, I think is very important, because to me, that directs the outcome. You don't have to get to the exclusion. The court ultimately, as I recall, suggested that to the extent I had to rule on this issue, I would go this direction, but ultimately decided it's not something. I'll assume that the insuring language is satisfied and then we'll go ahead and we'll get right to the exclusion. But that, to me, that's this case, and that case focused on Maples. And if you look at some of these cases just individually or in the aggregate, to me, again, they provide what I think is a very, very clear footprint on how California law has, with unity, addressed these issues. In fact, the Maples court itself, as I recall, started off its discussion of this particular issue with a sentence that went along the lines of, it has been the law in this state for so many years that one looks to the immediate cause, not those acts or omissions that are antecedent to that. And I think that dictates the result. What about the case that Mr. Clark alluded to, the Priest case, the negligent retention of the priest? I think it's Howard versus American National Fire Insurance. If you look at Howard and a couple of other cases in which they rely, a lot of those cases cite each other. But without citing any California cases that support the conclusion reached. And with respect to those courts, they're analyzed without context or tethered to the law, to me. And they're sort of internally, again, citing each other. I mentioned... You're saying they're not persuasive, but you're not distinguishing them. Well, I'm not distinguishing them in the sense that they rely on conclusions without legal predicates to reach those conclusions. So I don't... They stand for a proposition asserted, but the basis for that proposition, if one opens up the curtain, is empty. Can I ask you a slightly different question about how other states have addressed this? Because this language appears, I assume, nationwide. In policies nationwide, rather. Yes. And I've been blessed to practice in several states, and we're coincidentally here with a panel that has diversity. I now live... Lived in many years for California, but now live in Ohio, so I border with Your Honor in Pennsylvania. And you're from Arizona, as I believe, Judge. That provides a good contrast, because with all respect to Pennsylvania and Arizona, California, in my opinion, is a very diverse state. And in my mind, has been... The judges have been more intellectually honest with retaining felicity to the language. Because in Pennsylvania, and also in Arizona, there's a subjective component of looking at the occurrence issue, and looking through the lens of, what did the insured expect? It's almost... Or just a reasonable insured. I guess I'm with you. It can't be a subject. We're not going to try to pry into the minds of an individual insured. But from the standpoint of a reasonable insured who purchased this coverage, what would they expect to be covered? I mean, that's how I guess I would look at it. And when... I can't say we've done a 50-state survey, but the forays we've made into looking at how other states have dealt with this issue, this state seemed to be kind of all over the map. There is some disparity in the states on how they address the issue. So why wouldn't... I guess it just seems a little bit odd for our court to basically pick sides for California. We don't have any definitive guidance from the California Supreme Court. Why not at least ask them? Maybe they'll say no, and then we'll have to decide, but why not at least ask them, hey, there's a division of authority in the rest of the country on a pretty core issue. Do you guys want to have an opportunity to weigh in on behalf of your state? That just seems to me the responsible thing for judges in our position to do. But you're resisting that, so I just... I don't quite understand why. I'm resisting... I guess there are a couple of things in your comment, if I may. My time is closed, so I don't mean to abuse that, but I do want to be responsive. It is true there's disparity among the states, but the issue on knocking on the door of the California Supreme Court is premised on whether there's sufficient direction in this state to gauge what the outcome should be. And I think through Maples, Delgado, Minkler, L.A. Checker's case, that there's not only sufficient clarity, there's a direction to be taken. And I think that's a direct road map. And the reason why I think California, which is distinct certainly from Pennsylvania, comes out the way it comes out is it disassociates the perspective of either the injured party or the insured, because it's not the actor, it's the act that resulted in the direct harm. But here, the act that resulted in the direct harm was certainly the molestation. And briefly, if I may, the other component, I teased you a little bit, excuse that term, about my view of LaDesma's perspective. One is this concept of what I believe infusing, a desire to infuse a subjective component in the analysis. But the other is, on reliance on this Allstate case and a couple of other cases, is sort of a quasi-quest to have you embrace a concurrent cause analysis, when certainly, just like the Farmer's Court noted very clearly, if you remove the molestation, then allegations of negligence, supervision, retention, etc. wouldn't be a cause of action. They wouldn't exist. And so, this is not a situation where you have two independent causes that produced the result. Clearly not. I don't think LaDesma would even stand up here and say that the supervision divorced from the molestation would have produced the tragic harm. Thank you. Briefly, Your Honors, and thank you. As to the concurrent cause analysis, what that is really referring to is whether an exclusion applies to the specific acts that caused the accident. And so, the concurrent causation analysis comes from the Partridge case and talks about if there is an exclusion that's applicable and there are two independent concurrent causes, either one of which could result in the accident, that you can get around an exclusion under a third party. And so, the third party liability policy, our citations to Garvey and to the third party liability policies are really to contrast with the district court's opinion that the actions of LaDesma and Meyer are too attenuated for coverage. In California, third party liability policies have to incorporate concepts of duty, causation, and fault in how they set up their coverage provisions. And so, in this case, it is logically inconsistent that the actions of LaDesma and Meyer can be caused by a third party liability policy. They are causally closely related enough to impose liability, and yet at the same time, too attenuated to provide coverage. And so, that's really the causation issue that we're raising with the citation to Garvey. In addition, Your Honor, I agree that it's unclear what footnote three in Minkler means. I think the parties have very different views of it. In our view, it would seem to cite to the argument section in Delgado, which goes back to the conduct of the insured for which they're attempted to be found liable. It cites to Hogan when they're looking at exactly which type of conduct becomes accidental or not at page 560. And so, it's not entirely clear exactly what the California Supreme Court meant by that, which is why the appellants believe that certification of the question is appropriate. If Your Honors don't have any further questions, I thank you very much. Thank you. Thank you both very much for your helpful arguments. The case of Liberty Surplus Insurance Corporation versus Ledesma and Meyer Construction is now submitted.
judges: Murguia, Watford, Vanaskie